UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE MIKESELL,<br><br>                Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. C24-1661JLR<br><br>ORDER |

## I. INTRODUCTION

Plaintiff Michelle Mikesell seeks review of the decision of an administrative law judge ("ALJ") denying her application for a period of disability and disability insurance benefits. The court has reviewed the administrative record (AR (Dkt. # 6)); Ms. Mikesell's submissions (Compl. (Dkt. # 3); Br. (Dkt. # 8)); Defendant Commissioner of Social Security's (the "Commissioner") response (Resp. (Dkt. # 10)); and the applicable

ORDER - 1

law. Being fully advised,[1] the court AFFIRMS the ALJ's decision and DISMISSES the case with prejudice.

## II. BACKGROUND

This case arises from the denial of Ms. Mikesell's application for disability and for disability insurance benefits. Specifically, Ms. Mikesell appeals an ALJ's decision finding that she is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*See* AR 18-35 (ALJ's decision).)[2] The court first discusses the relevant factual background and the ALJ's decision.

Ms. Mikesell was born in 1971. (AR 43.) From 2004 to 2019, she was employed in several different roles, including as a realtor, a data manager, a wholesale food service manager, an analyst, a regional compliance consultant, and an auditor. (AR 66-67, 106, 293-94.) Ms. Mikesell stopped working on October 31, 2019. (AR 289.) On May 12, 2020, Ms. Mikesell was involved in a car accident. (AR 80, 114.) In April 2021, she received a vaccine and suffered an adverse reaction. (AR 452, 462.)

In September 2021, Ms. Mikesell applied for disability and disability insurance benefits, alleging a disability onset date of August 31, 2021. (AR 111-112.) Using the

---

[1] The parties do not request oral argument. (*See* Br. at 1; Resp. at 1.) The court concludes that oral argument is not necessary to decide this appeal. *See* Local Rules W.D. Wash. LCR 7(b)(4); *see also* 42 U.S.C. § 405(g) (authorizing reviewing courts to enter judgment "upon the pleadings and transcript of the record").

[2] In citing the administrative record, the court refers to the stamped page numbers on the bottom left corner of the page.

five-step disability evaluation process,[3] the ALJ evaluated Ms. Mikesell's claim and found as follows:

At step one, Ms. Mikesell has not engaged in substantial gainful activity since August 31, 2021, the alleged onset date of her disability. (AR 20.)

At step two, Ms. Mikesell has the following severe impairments: "obesity, fibromyalgia, migraine headaches, and trochanteric bursitis[.]" (AR 20.)

At step three, Ms. Mikesell does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[4] (AR 24.) As to residual functional capacity,[5] the ALJ concluded as follows:

> [Ms. Mikesell] has the residual functional capacity to perform to perform light work as defined in 20 CFR § 404.1567(b), except no climbing ladders, ropes, or scaffolds; no working around unprotected heights or unprotected dangerous moving machinery; no frequent climbing, ramps, stairs, balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to vibrations (tools, work surfaces); and [must] work in [an] environment with no more than moderate noise levels . . . [and] no more light/brightness than normal indoor lighting (such as in [an] office, factory, [or] retail setting).

(AR 26 (cleaned up).)

---

[3] *See* 20 C.F.R. §§ 404.1520, 416.920.

[4] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing impairments).

[5] A residual functional capacity finding reflects the most that a claimant can do at work, considering the limitations caused by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a)(1). The Commissioner assesses residual functional capacity before moving from step three to step four, and the assessment informs the analysis at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4). The parties refer to residual functional capacity as "RFC." (*See generally* Br.; Resp.).

ORDER - 3

1  At step four, Ms. Mikesell is capable of performing past relevant work as a
2  "product auditor, real estate agent, computer operator, computer systems hardware
3  analyst, merchandise manager, and data processing manager[,]" none of which requires
4  work-related activities outside of Ms. Mikesell's residual functional capacity.  (AR 33.)
5  At step five, Ms. Mikesell has not been under a disability, as defined in the Social
6  Security Act, from August 31, 2021 through April 15, 2024—the date of the ALJ's
7  decision.  (AR 35.)
8  Accordingly, the ALJ concluded that Ms. Mikesell is not disabled under sections
9  216(i) and 223(d) of the Social Security Act.  (AR 35.)

### III.    DISCUSSION

Ms. Mikesell asks that the court reverse the ALJ's decision and remand the case for a new hearing because the ALJ failed to properly credit Ms. Mikesell's claims as to the limiting effects of (1) her migraines, and (2) her fibromyalgia.  (Br. at 1-7.)  After discussing the applicable standard of review, the court addresses Ms. Mikesell's contentions.

**A.    Standard of Review**

After an ALJ renders a final decision on a claim for social security disability insurance benefits, a claimant may obtain judicial review by filing a civil action in a district court.  42 U.S.C. § 405(g).  The court may affirm, modify, or reverse the ALJ's decision, with or without remanding the action for a rehearing.  *Id.*

A court will not disturb the ALJ's decision unless the decision is based upon legal error or not supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214

& n.1 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]"). As to legal error, courts apply harmless error principles and will uphold an ALJ's decision where an error "is inconsequential to the ultimate non[-]disability determination[.]" *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014).

As to substantial evidence, courts require "more than a mere scintilla" of evidence in the record, "but less than a preponderance[.]" *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Lingenfelter v. Asture*, 504 F.3d 1028, 1035 (9th Cir. 2007)); *see also id.* (explaining that substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion"). A reviewing court "must consider the entire record as a whole[,]" *id.* (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014)), and must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record[,]" *Treichler*, 775 F.3d at 1099. Put another way, courts will uphold the ALJ's decision where the evidence "is susceptible to more than one rational interpretation" and one of those interpretations supports the ALJ's conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Ninth Circuit imposes a heightened evidentiary standard that must be met before an ALJ may reject a claimant's testimony about his or her symptoms. *See Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022); *Carmickle v. Comm'r*, 533 F.3d 1155, 1160-61 (9th Cir. 2008). Specifically, if a claimant testifies to his or her symptoms and presents "objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the . . . symptoms alleged[,]" the ALJ must accept the

claimant's testimony about the severity of the symptoms or offer "specific, clear and convincing reasons" for finding otherwise.[6]  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (cleaned up).  This standard essentially requires the ALJ to show his or her work by citing to "specific, clear, and convincing evidence" that supports discounting the claimant's testimony, such as objective medical evidence, inconsistent daily activities, conservative treatment plans that undermine the testimony, and internal inconsistencies in the claimant's testimony.[7]  *See Smartt*, 53 F.4th at 497-500; *Batson v. Comm'r*, 359 F.3d 1190, 1196-97 (9th Cir. 2004); *see also Carmickle*, 533 F.3d at 1162 ("[A] conservative course of treatment can undermine allegations of debilitating pain . . . [except] where the claimant has a good reason for not seeking more aggressive treatment.").

### 1. Substantial Evidence Supports the ALJ's Conclusion that Ms. Mikesell's Migraines Were Not as Limiting as She Claimed.

Ms. Mikesell argues that substantial evidence does not support the ALJ's conclusions that her migraines were not as limiting as she claimed because, she asserts, the ALJ improperly (1) failed to credit her testimony that she was unable to work because of her migraines, and (2) "failed to demonstrate any inconsistency between the record"

---

[6] This heightened standard does not apply "when there is affirmative evidence that the claimant is malingering." *Carmickle*, 533 F.3d at 1160.

[7] If the ALJ relies upon legally invalid reasons in rejecting a claimant's symptom testimony, reviewing courts apply harmless error principles to assess whether the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence—not necessarily whether the ALJ would reach the same conclusion if he or she reassessed credibility on remand.  *See Carmickle*, 533 F.3d at 1162; *Batson*, 359 F.3d at 1197.

and her testimony about her migraines. (Br. 2-6.) Ms. Mikesell states that the ALJ should have credited her migraine log and her testimony that her migraines worsened after a car accident in 2020. (*Id.* at 3-6.)

The ALJ concluded that, notwithstanding her migraines, Ms. Mikesell has the residual functional capacity to perform light work, with some pertinent exceptions, including that she work in only normal indoor lighting conditions with exposure to no more than moderate noise levels. (AR 26.) Accordingly, the ALJ concluded that Ms. Mikesell can perform past relevant work, including as a product auditor, real estate agent, computer operator, and data processing manager, and that Ms. Mikesell is not disabled. (AR 33-35.)

The ALJ supported her conclusions by explaining that Ms. Mikesell's statements about the "intensity, persistence, and limiting effects" of her symptoms were inconsistent with the record evidence, including medical evidence. (AR 29.) Specifically, the ALJ cited several examples of such inconsistencies, including that (1) despite Ms. Mikesell's claimed inability to work, Ms. Mikesell testified that she never misses her weekly therapy meetings and monthly video sessions with a psychiatrist, even if she has a migraine followed by a nap on the same day; (2) record evidence demonstrated that Ms. Mikesell attended her medical appointments well-groomed, which contradicted her reports that she can only shower once per month and brush her teeth once per week; (3) Ms. Mikesell has had migraines since she was a child and has consistently worked notwithstanding those migraines; (4) despite the frequency of her medical appointments and her claims about the frequency of her migraines, medical professionals never noted that Ms. Mikesell

ORDER - 7

1  appeared to be in pain or had difficulty concentrating—instead, they routinely noted that
2  Ms. Mikesell presented as fully oriented, pleasant, or cooperative;[8] and (5) despite her
3  claims that functional limitations prevent her from completing household chores, Ms.
4  Mikesell admitted to installing security cameras herself "all throughout [her] house on the
5  inside and the outside[.]" (AR 29-31; *see also* AR 99 (testimony concerning camera
6  installation).)

7  Upon its own review of the record, the court concludes that the ALJ clearly and
8  convincingly explained the rationale for her conclusions and that substantial evidence
9  supports those conclusions for several reasons. First, Ms. Mikesell's actions and
10 appearance in seeking healthcare undermine her testimony about the severity and
11 debilitating nature of her migraines. Ms. Mikesell testified that she does not miss her
12 appointments. (*See* AR 95, 101.) The record also demonstrates that Ms. Mikesell
13 consistently appears well-groomed at medical appointments and presents as alert and
14 pleasant. (*See, e.g.*, AR 457, 460, 535, 538, 888.) This contradicts Ms. Mikesell's claims
15 that her unpredictable migraines render her unable to regularly attend work and prevent
16 her from regularly brushing her teeth and showering.

17 Second, although Ms. Mikesell has had a comparable number of migraines for
18 most of her life, she was able to remain regularly employed from November 2004 to
19 October 2019. (*See* AR 293-94.) During this time, Ms. Mikesell testified that she

---

21 [8] The ALJ also observed that medical providers never noted Ms. Mikesell to have difficulty focusing "except when [she was] seen for an examination to support her disability
22 claim[.]" (AR 31.)

experienced approximately one to two migraines per week. (AR 80-82.) She testified that, today, she experiences two to three migraines per week and that her migraines are less predictable, though it still takes her about the same amount of time to abort and recover from her migraines as it used to. (*See* AR 80-82.) Even accepting Ms. Mikesell's testimony, the court does not see how one additional migraine per week and less predictability in the timing of her migraines could wholly prevent Ms. Mikesell from working: Ms. Mikesell was able to work for almost 15 years while experiencing, on average, more than one migraine per week of approximately the same intensity and duration. (*See* AR 80-82.)

Third, the record undermines Ms. Mikesell's testimony about the frequency and severity of her migraines. In March 2020, two months before Ms. Mikesell's car accident, a healthcare provider noted that Ms. Mikesell's migraines are "much better controlled" with medication and that Ms. Mikesell has migraines "about 5-6 days per week[.]" (AR 311.) This contradicts Ms. Mikesell's testimony that her average baseline before her car accident and adverse vaccine reaction was only one to two migraines per week. Later, in January 2022—after *both* Ms. Mikesell's car accident and vaccine reaction—a healthcare provider reported that Ms. Mikesell experiences migraines only one to two times per week. (AR 454.) This contradicts Ms. Mikesell's claims that the frequency of her migraines increased. Additionally, on July 15, 2022, a healthcare provider stated that Ms. Mikesell's migraines were "much improved" after starting Ajovy

migraine medication. (AR 518.) This further undermines Ms. Mikesell's testimony that her migraines remain wholly debilitating and prevent her from working.[9]

In sum, the ALJ presented specific, clear, and convincing evidence to discount Ms. Mikesell's testimony about the severity of her migraines and their impact on her ability to work, and substantial evidence in the record supports the ALJ's determination that Ms. Mikesell has not been under a disability because of her migraines and that she has the residual functional capacity for light work. (*See* AR 31, 35.)

2. <u>Substantial Evidence Supports the ALJ's Conclusion that Ms. Mikesell's Fibromyalgia Pain Was Not as Limiting as She Claimed.</u>

Ms. Mikesell argues that the ALJ should have credited her allegations that her fibromyalgia flares cause her incapacitating, chronic pain that prevents her from working. (Br. 6-7.) She argues that the ALJ incorrectly (1) considered evidence relating to treatments she received that are not specifically designed to treat fibromyalgia, and (2) failed to address medical evidence that her fibromyalgia causes increased pain and fatigue following increased activity. (*Id.*)

The ALJ observed that Ms. Mikesell testified that she has fibromyalgia flares three to four days a week and is incapacitated as a result. (AR 29.) The ALJ determined, however, that Ms. Mikesell's statements about the intensity, persistence, and limiting

---

[9] Ms. Mikesell also contends that the record does not support the ALJ's conclusions about her residual functional capacity because, she states, nothing in the record indicates that limiting her to jobs with normal light and moderate noise would affect the frequency or severity of her migraines. (*Id.* at 3.) Ms. Mikesell's migraines, however, make her more sensitive to light and noise (*see, e.g.*, AR 306, 309), which means that substantial evidence supports the ALJ's conclusion that limiting Ms. Mikesell's exposure to excessive light and noise helps to address Ms. Mikesell's migraines and their limiting effects.

effects of her symptoms are inconsistent with the record for several reasons, including the following: (1) in August 2022, Ms. Mikesell reported a "marked improvement" in her widespread pain after a hysterectomy and lumbar RFA; (2) in January 2023, she reported a 90% improvement in pain; and (3) in May 2023, Ms. Mikesell received a recommendation of eight physical therapy visits, but the record contains no evidence that Ms. Mikesell attended the recommended sessions and "it appears that [Ms. Mikesell's] back pain was not significant enough to motivate her to comply with the recommended therapy[.]" (AR 29.)

Upon its own review of the record, the court concludes that substantial evidence supports the ALJ's conclusion. The medical evidence shows that Ms. Mikesell's fibromyalgia presented as generalized pain and sensitivity to touch, including lower back pain. (*See, e.g.*, AR 585-86 (Ms. Mikesell's reports of pain were consistent with fibromyalgia), AR 632 (chronic pain, including back pain, likely due to fibromyalgia), AR 750 (same), AR 1065 (same).) Ms. Mikesell sought to manage her pain, including any pain caused by her fibromyalgia, and the record reflects that she visited the Virginia Mason Health System's Interventional Pain Clinic several times for pain management. (*See, e.g.*, AR 563, 634, 665, 721.) The record also reflects that these efforts met with success. For instance, in May 2022, Ms. Mikesell reported a 70% improvement in her pain for three months from her pain management treatments. (AR 586.) In June 2022, Ms. Mikesell reported 80% relief from pain, and she rated her pain approximately "6/10" to "8/10" before treatment, and only "1/10" after treatment. (AR 500, 503.) In January 2023, Ms. Mikesell reported a 90% improvement in pain since July 2022. (AR 936.)

Therefore, the record amply shows that Ms. Mikesell underwent successful pain treatments and reported significant—and, at times, almost complete—relief from pain. Even assuming that some of the treatments she received were not specifically designed to treat fibromyalgia, the ALJ properly considered Ms. Mikesell's successful treatments and her own reports to her medical providers of significantly reduced pain in discounting her later testimony that her flares of pain from fibromyalgia prevent her from working.[10] Accordingly, the ALJ presented specific, clear, and convincing evidence to discount Ms. Mikesell's testimony about the severity of her fibromyalgia pain and its impact on her ability to work, and substantial evidence in the record supports the ALJ's conclusions concerning Ms. Mikesell's fibromyalgia.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED. Ms. Mikesell's complaint (Dkt. # 1) and this action are DISMISSED with prejudice.

Dated this 7th day of May, 2025.

JAMES L. ROBART
United States District Judge

---

[10] Moreover, contrary to Ms. Mikesell's argument that the ALJ failed to properly consider evidence that her fibromyalgia pain increases after physical activity and during periods of fatigue (Br. at 7), the ALJ properly accounted for the effects of physical activity and fatigue by limiting Ms. Mikesell to "light work" and further providing that Ms. Mikesell's residual functional capacity does not include, in relevant part, climbing, crouching, and crawling (AR 26).

ORDER - 12